UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DANNY E. BROWN, SYLVESTER BUTLER,
KENNETH CAUDILL, SAMMY J. DOUSE,
WILLIE ENGLISH, SIDNEY EVERETT,
KELVIN FRAZIER, MORRIS J. GILBERT,
JIJUAN T. HAGANS, TROY D. HALL,
BENJAMIN LAFLOWER, CURT MASSIE,
ANTONIO J. MCCLOUD, LAMAR A. MIFFIN,
MICHAEL L. MONTGOMERY, KUNTA PORTER,
ISSAC SHARPE, SAMUEL STROTHER,
JEREMIAH THOMAS, EUGENE E. ULRATH,
GLENN WHEELER, REGINALD WILLIAMS,

                    Plaintiffs,

vs.                              Case No.  2:03-cv-526-FtM-29DNF

SECRETARY, DEPARTMENT OF
CORRECTIONS, GERALD H. ABDUL-WASI,
JOSEPH THOMPSON, CHESTER LAMBIN,
JOSEPH PETROVSKY, WENDELL
WHITEHURST,

                    Defendants.
_____/

## OPINION AND ORDER

This matter comes before the Court on Plaintiffs' Motion for
Class Certification (Doc. #166) filed on January 20, 2005.
Plaintiffs also filed supporting affidavits and exhibits (Doc.
#168.) Defendants filed their Response in Opposition to
Plaintiffs' Motion for Certification of Class (Doc. #170) on
January 27, 2005.

## I.

Plaintiff Danny E. Brown and eighteen other plaintiffs[1] bring this action pursuant to 42 U.S.C. § 1983 alleging a violation of their Eighth Amendment rights.   Plaintiffs seek prospective injunctive and declaratory relief against defendants James V. Crosby, Jr., Gerald H. Abdul-Wasi, Joseph Thompson, Chester Lambdin, Joseph Petrovsky, and Wendell Whitehurst in their official capacities at the Florida Department of Corrections and various Florida correctional institutions.[2]  No monetary damages are sought by any plaintiff or the proposed class, although the named plaintiffs have a separate action pending in the Jacksonville Division of this court seeking money damages for the same conduct alleged in this case.

---

[1]On June 10, 2005, the Court granted voluntary dismissals as to plaintiffs Troy D. Hall, Michael L. Montgomery, and Glenn Wheeler, all of whom had been released from the custody of the Florida Department of Corrections.

[2]Defendant Crosby is the Secretary of the Florida Department of Corrections and is responsible for the operation of all prisons under the supervision and control of the Florida Department of Corrections.  Defendant Abdul-Wasi is the Inspector General of the Florida Department of Corrections and is statutorily responsible for investigating complaints of staff misconduct, including the investigation of all reported uses of forces by staff, and for reporting his finding to prison management.  Defendant Thompson is the warden at Florida State Prison.   Defendant Petrovsky is the warden at Santa Rosa Correctional Institution.   Defendant Whitehurst is the warden at Washington Correctional Institution. Defendant Lambdin is the warden at Charlotte Correctional Institution.   These wardens are responsible for the operation of their respective prisons, including review and approval or disapproval of the use of force.

The claims in this case involve the non-spontaneous use of chemical agents in controlled situations where time constraints are not an issue. (Doc. #1, ¶53.) "Spontaneous" use of force involves an immediate need to use force without time for reflection or planning, and is specifically excluded from the scope of this action. (<u>Id</u>. at ¶50.) "Non-spontaneous" use of force is defined in the Complaint as a use of force which occurs after time for reflection and planning by the correctional staff using the force. (<u>Id</u>. at ¶ 51.) "Controlled situations" is defined in the Complaint as situations where inmates are housed in segregation or are otherwise locked down or restrained, and includes Administrative Confinement, Disciplinary Confinement, Close Management, and Maximum Management. (<u>Id</u>. at ¶54.)

Plaintiffs allege that employees at the Florida correctional institutions routinely misuse chemical agents on inmates in segregated housing units, and that defendants permit this routine misuse by refusing to reprimand the correctional officers. Plaintiffs allege that "[t]he use of force by way of chemical agents, as alleged in this Complaint, is done as a matter of routine, and is permitted and encouraged, in accordance with the established policies, practices and customs of the Florida Department of Corrections." (Doc. #1, p. 58.) Plaintiffs further assert "[t]he defendants, and other supervisory employees, routinely violate controlling constitutional standards by

participating in, facilitating, encouraging, or acquiescing in the behavior of their subordinates and are fully aware that chemical agents are used maliciously and sadistically for the very purpose of causing harm and not in a good-faith effort to maintain or restore discipline, and with that knowledge, fail to take any corrective action." (Id.) According to plaintiffs, such policy, practice and custom of misuse "necessitate[] injunctive relief directing defendants to cease their practice of permitting employees to abuse inmates with chemical agents and to implement remedial measures." (Id., p. 10.)

Plaintiffs seek to represent a Rule 23 class that they describe in the following terms:

[A]ll persons who are:

(a) now in, or will hereafter come into, the custody of the Florida Department of Corrections, and

(b) now housed, or will hereafter be housed, in any type of segregated housing, including but not limited to Maximum Management, Close Management, Disciplinary Confinement or Administrative Confinement, and

(c) have been, or may be in the future, subjected to a non-spontaneous use of force by way of chemical agents used maliciously and sadistically for the very purpose of causing harm and not in a good-faith effort to maintain or restore discipline.

(Doc. #1, p. 8, ¶37.)

A synopsis of the individual allegations of the nineteen plaintiffs is as follows:

(1) **Plaintiff Danny E. Brown** (Brown) was housed in administrative confinement at Santa Rosa Correctional Institution where he declared a psychological emergency because he was feeling suicidal and homicidal. He was placed on Alternative Medical Housing Cell (hereinafter AMHC) status, which required that he be observed for potential self-injury. At some point during Brown's confinement, he began to cover his body with his own feces. The correctional officers discharged chemical agents into Brown's cell without justification. Brown alleges that as a result of the use of the chemical agents, he suffered an asthma attack, breathing difficulties, and mental and emotional distress.

(2) **Plaintiff Sylvester Butler** (Butler), and inmate with a history of psychiatric problems and borderline developmentally disabled, was housed in a Close Management cell at Santa Rosa Correctional Institution from March 14, 2000 to March 15, 2000. During that time, Butler alleges that he was sprayed with chemical agents on multiple occasions without justification and, as a result, suffered burns. After his removal to the Florida State Prison, Butler claims that he was again sprayed without justification with chemical agents when he requested medical assistance on October 3, 2000, and suffered injuries as a result. Butler is currently imprisoned at the Columbia Correctional Institution.

(3) **Plaintiff Kenneth Caudhill** (Caudhill) has epilepsy and mental illness. He was housed in Close Management at the Florida State Prison during the alleged occurrence of the unjustified non-spontaneous use of chemical agents on him as a response to an inquiry made to a correctional officer. He claims to have suffered seizures and asthma attacks as a result of such use. Presently, Caudhill is imprisoned at the Union Correctional Institution.

(4) **Plaintiff Sammy J. Douse** (Douse) is a developmentally disabled inmate housed at the Charlotte Correctional Institution. He alleges that, on two separate occasions, the correctional officers misused chemical agents on him. Douse contends the first misuse occurred as a response to his request for additional grievance forms and the second misuse occurred "while he was handcuffed and locked in a confinement shower, because he was talking to other inmates." (Doc. #1, p. 25.) He maintains that he developed a chemical burn on his nose from the first

incident and on his right arm and right leg from the second incident.

(5) **Plaintiff Willie English** (English) has a history of very serious mental illness. He was recently committed to the Correctional Mental Health Institution at Zephyrhills, but is currently assigned to the Florida State Prison. At the time of his alleged episode of chemical agent misuse, English was imprisoned at the Florida State Prison. He alleges that on multiple occasions several correctional officers discharged chemical agents into his cell without any provocation from him. English claims that his mental condition deteriorated after the incidents.

(6) **Plaintiff Sydney Everett** (Everett) is a blind inmate currently housed at Tomoka Correctional Institution. At the time of the alleged incident, he was imprisoned at the Washington Correctional Institution. Everett alleges the correctional officer discharged chemical agents into his cell because his bed was not properly made. Everett complains that his eye sockets became swollen and his prosthetic eyes could not be placed into the eye sockets for several weeks.

(7) **Plaintiff Kelvin Frazier** (Frazier) has asthma and is imprisoned at the Santa Rosa Correctional Institution. At the time of the alleged incidents, he was housed at the Florida State Prison. Frazier alleges that chemical agents were used for retaliation on two occasions. The first was in retaliation for the demands he was making on security staff. The second incident occurred as a result of the grievances which he filed against some of the correctional officers. He claims to have suffered an asthma attack and second-degree chemical burns on his neck and left ear from the first incident and aggravated burns on his neck and forearms from the second incident.

(8) **Plaintiff Morris J. Gilbert** (Gilbert) is housed at the Charlotte Correctional Institution. He claims that correctional officers "repeatedly sprayed with OC pepper spray and CS tear gas as punishment for allegedly committing an obscene act at an earlier time." (Id., p. 32.) Gilbert makes no allegations regarding injuries.

(9) **Plaintiff JiJuan T. Hagans** (Hagans) has asthma and mental health problems relating to depression, and is currently imprisoned at the Union Correctional

Institution.  He complains about the unjustified use of
chemical agents on him which occurred on three occasions.
Hagans alleges that at the first incident the
correctional officers sprayed chemical agents into his
cell because he refused to comply with and questioned an
order directing him to cease watching the discharge of
chemical agents into another cell.  As for the second and
third incidents, Hagans makes a conclusory allegation
that chemical agents were used on him without
justification.  As a result of the non-spontaneous use of
chemical agents during these incidents, he claims to
suffer life-threatening asthma attacks.

(10) **Plaintiff Benjamin LaFlower** (LaFlower) is imprisoned
at the Charlotte Correctional Institution.  He complains
that correctional officers sprayed chemical agents into
his cell as "retaliation for making a disrespectful
comment to Officers Glover and Ronga the previous day."
(Id., p. 37.)  During this alleged incident, the
correctional officers also used a long metal bar to push
LaFlower away from the food flap, which was used to
administer the chemical agents into the cell.  As a
result, LaFlower's hand was cut by the long metal bar.
No chemical agent injury was alleged.

(11) **Plaintiff Curt Massie** (Massie) has been diagnosed
with obsessive compulsive disorder and delusional
disorder.  He was incarcerated at the Florida State
Prison at the time of the alleged incident, and is
currently imprisoned at the Charlotte Correctional
Institution in Close Management II status.  He alleges
that chemical agents were used as punishment for "making
a funny face behind a nurse's back."  (Id., p. 38.)
Moreover, there were no warnings issued before the
chemical agents were used.  After the chemical agents
were discharged, a correctional officer used hot water to
purposely intensify the pain he experienced from the
chemical agents, and he suffered second-degree chemical
burns on his left arm and leg, back and hip.  A second
use of a chemical agent occurred the following year, but
no details are given in the Complaint.

(12) **Plaintiff Antonio J. McCloud** (McCloud) is an
asthmatic currently housed at the Everglades Correctional
Institution; however, at the time of the alleged
incident, he was incarcerated at Washington Correctional
Institution in a Close Management cell.  McCloud alleges
that chemical agents were used on him because he refused

to consent to share a cell with another inmate.  He
further claims that his exposure to "chemical agents
caused him to experience breathing difficulties." (<u>Id</u>.,
p. 41.)  Additionally, he allegedly suffered mental and
emotional distress as a result of the incident.

(13)  **Plaintiff Lamar A. Miffin** (Miffin) was being
temporarily moved from the Florida State Prison to the
Washington Correctional Institution, where the alleged
chemical agent spraying incident occurred.  Miffin claims
that, after the correctional officers issued a warning to
refrain from testifying against the State, he was sprayed
with chemical agents without justification.  He further
maintains that he suffered chest pains and that the skin
peeled off his head, neck, and upper back.

(14)  **Plaintiff Issac Sharpe** (Sharpe) was also being
temporarily moved from the Florida State Prison to the
Washington Correctional Institution, where the alleged
chemical agent spraying incident occurred.  He is
currently housed in the Union Correctional Institution.
Sharpe claims that, after the correctional officers
issued a warning to refrain from testifying against the
State, he was sprayed with chemical agents without
justification.  As a result of this exposure, he alleges
that he suffered two asthma attacks.

(15)  **Plaintiff Kunta Porter** (Porter) is housed in Close
Management I status at Charlotte Correctional
Institution, where he alleges that he was sprayed with
chemical agents for speaking with other inmates in nearby
cells.  Porter has made no injury allegations.

(16)  **Plaintiff Samuel Strother** (Strother) was released
from the Charlotte Correctional Institution in May, 2005.
He claims that, on two separate occasions, he was sprayed
with chemical agents because he refused to comply with
orders.  He also maintains that he suffered asthma
attacks on both occasions.

(17)  **Plaintiff Jeremiah Thomas** (Thomas) is currently
housed in the Union Correctional Institution and has an
extensive history of psychiatric problems and asthma.
Thomas alleges that he was sprayed with chemical agents
on, at least, nineteen occasions while he was
incarcerated at the Florida State Prison. He claims that
he was sprayed with chemical agents in response to his
request for medical assistance in July 2000.  Thomas also

maintains that chemical agents were used on him approximately six other times in July and August 2000. In September 2000, Thomas complains that he was sprayed with chemical agents without any warnings.  He asserts that he suffered severe burns on his ear, neck, abdomen, left arm, upper back, and lower right leg.

(18) **Plaintiff Eugene E. Ulrath** (Ulrath) is currently housed in the Union Correctional Institution.  At the time of the alleged incidents, he was incarcerated at the Florida State Prison.  Ulrath claims that he was sprayed with chemical agents without any warning or justification after declaring a psychological emergency, which was ignored.  He further asserts that he suffered chemical burns and developed blisters on his back, buttock, and leg.

(19) **Plaintiff Reginald Williams** (Williams) is currently incarcerated in the Santa Rosa Correctional Institution, but the alleged incidents occurred while he was imprisoned at the Florida State Prison.  Williams claims that the correctional officers sprayed him with chemical agents in retaliation for litigation that he filed against the prison officials.  He further maintains that he was sprayed with chemical agents directly in the face. As a result, his right eye is permanently damaged and his vision has been impaired.  Williams also asserts that, after the exposure to the chemical agents, the correctional officers subjected him to a hot water shower which aggravated the burns.

## II.

"Questions concerning class certification are left to the sound discretion of the district court." Cooper v. Southern Co., 390 F.3d 695, 712 (11th Cir. 2004).  "For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." Klay v. Humana, Inc., 382 F.3d 1241, 1250 (11th Cir. 2004), cert. denied, 125 S.Ct.

877 (2005).  The four threshold requirements are (1) numerosity: the class is so numerous that joinder of all members is impractical; (2) commonality: questions of law or fact are common to the class; (3) typicality: the representatives of the class present claims or defenses that are typical of the class; (4) adequacy: the representatives of the class will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a); <u>Turner v. Beneficial Corp.</u>, 242 F.3d 1023, 1025 (11th Cir.) (<u>en</u> <u>banc</u>), <u>cert. denied</u>, 534 U.S. 820 (2001); <u>Pickett v. Iowa Beef Processors</u>, 209 F.3d 1276, 1279 (11th Cir. 2000).  In this case, plaintiffs seek class certification under Rule 23(b)(2), which requires plaintiffs to show that defendants have acted in ways generally applicable to the class, making declaratory or injunctive relief appropriate.  "The initial burden of proof to establish the propriety of class certification rests with the advocate of the class."  <u>Rutstein v. Avis Rent-A-Car Sys., Inc.</u>, 211 F.3d 1228, 1233 (11th Cir. 2000), <u>cert. denied</u>, 532 U.S. 919 (2001).

Defendants oppose class certification because the proposed class definition is impermissibly overbroad, and the proposed class and any possible subclasses fail to satisfy the requirements of standing, typicality, and adequacy of representation.

**A.  Standing:**

Defendants first contend that plaintiffs lack Article III standing to raise the Eighth Amendment claim on behalf of a class. Defendants assert that upon close inspection of plaintiffs' submission, only seven inmates suffered injuries other than the skin or eye redness or irritation that pepper spray was designed to produce, and that this does not justify a class action of the magnitude sought by plaintiffs.  Additionally, defendants assert that plaintiffs have not adequately shown a sufficient likelihood of future injury.

A prerequisite to class certification is that "it must be established that the proposed class representatives have standing to pursue the claims as to which classwide relief is sought." Wooden v. Board of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1287 (11th Cir. 2001).  The Supreme Court has "repeatedly held that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Prado-Steiman v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000), quoting General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982).  "[A] plaintiff cannot represent a class unless he has standing to raise the claims of the class he seeks to represent." Murray v. U.S. Bank Trust Nat'l Ass'n, 365 F.3d 1284, 1288 n.7 (11th Cir. 2004).  The district court therefore must determine that at least one named class representative has Article III standing to

-11-

raise each class claim or subclaim.  Prado-Steiman, 221 F.2d at 1279; Murray, 365 F.3d at 1288 n.7.

Additionally, plaintiffs seeking injunctive relief lack standing unless they allege facts giving rise to an inference that they will suffer future injury at the hands of the defendants. Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001).  "[A] party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate – as opposed to a merely conjectural or hypothetical – threat of *future* injury." Church v. City of Huntsville, 30 F.3d 1332, 1336 (11th Cir. 1994), citing City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983); see also Bowen v. First Family Fin. Servs., Inc., 233 F.3d 1331, 1340 (11th Cir. 2000).  "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  Lyons, 461 U.S. at 102 (quotation omitted).  Thus, for a court to have jurisdiction to award declaratory or injunctive relief, plaintiffs "must assert a reasonable expectation that the injury they have suffered will continue or will be repeated in the future."  Malowney v. Federal Collection Deposit Group., 193 F.3d 1342, 1347 (11th Cir. 1999).

In a prior Order (Doc. #115), the Court rejected defendants' argument that plaintiffs did not adequately allege standing to pursue their individual claims.  Even if defendants are correct

that only seven inmates suffered sufficiently severe injuries from the pepper spray, this does not negate the possibility of a proper class.  Defendants' reliance on <u>Ford v. NYL Care Health Plans</u> is misplaced because that court referenced the lack of injury in its discussion of typicality, not standing.  190 F.R.D. 422, 426 (S.D. Tex. 1999).  The Court finds that plaintiffs have satisfied the pleading requirement for standing by alleging that plaintiffs remain incarcerated in the same offending facilities, the non-spontaneous use of chemical agents remains an available option for the correctional officers at these institutions, and the statistics concerning the use of chemical agents coupled with plaintiffs' individual histories make such chemical use reasonably likely in the future.  Because at least one of the named putative class members in this case satisfies the standing requirements, the Court finds that plaintiffs have standing to seek certification of a class under the Eleventh Circuit standard.[3]

**B.   Rule 23(a) Requirements:**

   **(1)   Numerosity**

   Rule 23(a)(1) requires that the class is so numerous that joinder of all members is impractical.  Practicability of joinder depends on many factors, including the size of the class, ease of

---

   [3]The Court finds, however, that plaintiff Samuel Strother is not a suitable class representative because he was released from custody on May 21, 2005, according to the Department of Correction website.

identifying its numbers and determining their addresses, facility of making service on them if joined, and their geographic dispersion. <u>Kilgo v. Bowman Transp., Inc.</u>, 789 F.2d 859, 878 (11th Cir. 1986). There is no specific number of class members necessary to evidence impracticability of joinder and it is not necessary that precise number of class members be known; the plaintiff, however, must show some evidence or reasonable estimate of the number of class members. <u>Id</u>.

Plaintiffs urge this Court to find numerosity based on the statistical evidence that the non-spontaneous use of chemical agents was used more than 6,000 times at the subject correctional institutions. (Doc. #167, p. 7.) Plaintiffs also submit affidavits and other exhibits illustrating the use of chemical agents in the subject correctional institutions and other facilities. Moreover, plaintiffs contend that the inclusion of future inmates as putative class members will make joinder impracticable. Defendants do not address the numerosity requirement, other than in connection with their standing argument. (Doc. #170, pp. 2-3.)

The class described in the Complaint (Doc. #1, p. 8) includes present and future inmates who are or will be housed in segregated housing in all of the Florida correctional institutions. This potentially includes every inmate taken into the custody of the Florida Department of Corrections, since each may be housed in

segregated housing at sometime in his or her incarcerative career. Even when limited to those who are subjected to the non-spontaneous use of force, it is clear that this proposed class satisfies the numerosity requirement of Rule 23.

### (2)  Typicality and Commonality[4]

"Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." Wooden, 247 F.3d at 1287.  Typicality is satisfied where the named plaintiffs' claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class. Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984), cert. denied, 470 U.S. 1004 (1985).

---

[4]"The typicality and commonality requirements are distinct but interrelated, as the Supreme Court has made clear:

> The commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

Cooper, 390 F.3d at 713, quoting Falcon, 457 U.S. at 157 n.13. "The commonality and typicality requirements overlap.  Both requirements focus on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." Cooper, 390 F.3d at 713, quoting Prado-Steiman, 221 F.3d at 1278. "Traditionally, commonality refers to the group characteristics as a whole and typicality refers to the individual characteristics of the named plaintiff in relation to the class." Prado-Steiman, 221 F.3d at 1279.

"A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." <u>Murray v. Auslander</u>, 244 F.3d 807, 811 (11th Cir. 2001)(citation omitted). Neither typicality or commonality require that all putative class members share identical claims, and both may be satisfied even if some factual differences exist between the claims of the named representatives and the claims of the class at large. <u>Prado-Steiman</u>, 221 F.3d at 1279 n. 14. "The typicality requirement may be satisfied despite substantial factual differences, however, when there is a strong similarity of legal theories." <u>Auslander</u>, 244 F.3d at 811 (citation omitted). "Nevertheless, the named plaintiffs' claims must still share the same essential characteristics as the claims of the class at large." <u>Cooper</u>, 390 F.3d at 714 (citation omitted).

"[T]he commonality requirement measures the extent to which all members of a putative class have similar claims." <u>Cooper</u>, 390 F.3d at 714. "Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof." <u>Auslander</u>, 244 F.3d at 811 (citation omitted). While the merits of plaintiffs' claim are not before the Court in a ruling on class certification, it is sometimes necessary to look behind the pleadings because evidence relevant to the commonality requirement is often intertwined with the merits. <u>Hudson v. Delta Air Lines,</u>

Inc., 90 F.3d 451, 457 (11th Cir. 1996), cert. denied, 519 U.S. 1149 (1997).

Here, all of the plaintiffs complain of unjustified or excessive use of force, and each plaintiff alleged that he was victimized by a common policy of chemical agent misuse for retaliatory or excessive penological purposes at the subject correctional institutions.  Specifically, plaintiffs assert that their individual injuries arise out of the same pattern and practice of unjustified and excessive use of force and the same misuse of force policy that gives rise to the injuries of the putative class members.  The Court cannot agree, and finds that plaintiffs do not satisfy the typicality requirement.

Plaintiffs seek to represent a very board class that purports to represent all present or future inmates housed in or who will be housed in some of type of segregated housing in all of the Florida correctional institutions.  The broadness of this purported class is tempered somewhat by the requirement that such inmates have been or in the future may be subjected to non-spontaneous use of force by way of chemical agents used maliciously and sadistically for the purpose of causing harm and not in a good faith effort to maintain or restore order.  This limitation, and in this context the very fact-intensive nature of an Eighth Amendment claims, require a detailed factual analysis to simply determine which individual inmates are within the proposed class.  Additionally, the decisions

to use chemical agents affecting inmates were and are made by correctional officers in disparate locations and based on the individual inmate's behavior, action, and/or response to the attending correctional officers and staff.  The existence of individual situations and the importance of factual distinctions in determining whether the application of force is justified or excessive fatally undermines the typicality between the named plaintiffs and the proposed class members or any possible sub-class members.

Plaintiffs also contend that all members of the putative class share common factual and legal questions because (1) plaintiffs presently live in some type of segregated housing; (2) non-spontaneous use of chemical agents has occurred 6,045 times in those units during the relevant period, and 6,032 inmates were the target of chemical agent use; and (3) "the chemical agents are used contrary to the rules of the Department of Corrections...."  (Doc. #167, pp. 8-9.)  The Court concludes that it is impossible to say that the affidavits of the named plaintiffs and the ways in which they claimed to have experienced chemical agent misuse could be fairly compared with the history or individual experiences of absent class members, or that the claims of class members share such common features that rulings could be fashioned to fairly adjudicate the claims as a group.  Class certification is sought by prisoners who are housed in various Florida correctional

institutions which are monitored and guarded by hundreds of correctional officers.   When a situation calls for the non-spontaneous use of chemical agents, the attending correctional officer makes a decision to discharge chemical agents under varying factors, e.g., whether the prisoner's action is causing a disturbance with other inmates, whether the attending correctional officer can safely extract the prisoner from the cell, if necessary, whether the attending correctional officer needs to prevent the prisoner from self-inflicting harm, etc.   In short, each individual claim has differing factors, and consequently, these variables make it impossible to fairly adjudicate the individual claims.   The Court finds that the commonality requirement is not satisfied.

This is not to say that Eighth Amendment claims can never be presented in a class action.   For example, in Chandler v. Crosby, a class of all death row inmates was certified in a suit alleging that the high temperatures in the cells violated the Eighth Amendment.   379 F.3d 1278 (11th Cir. 2004).   The high temperatures applied equally to all inmates, and either did or did not violate the Eighth Amendment without regard to the individual circumstances of the inmate.   From a legal perspective, however, this case has more in common with Cooper, where the Eleventh Circuit held that the district court had not abused its discretion in denying class certification based on the plaintiffs' failure to meet the

typicality and commonality requirement. 309 F.3d at 714. That case involved a challenge to the employment practices and policies relating to hiring, compensation, and promotion at four companies, which provided a wide range of energy-related products and services throughout the southeastern United States. Id. at 715. Plaintiffs attempted to represent a class of all black employees of the defendants, at all levels of the corporate hierarchy of all the defendant companies. In upholding the district court's decision denying class certification, the Eleventh Circuit reasoned that, because the plaintiffs asserted broad claims on behalf of a broad class, they were required to identify representative plaintiffs who shared those broad claims. However, while the different named plaintiffs may have had claims that were typical of some conceivable subgroups of the overall class, the seven named plaintiffs, collectively, did not have claims that would have been typical of the entire class. Id.

### (3) Adequacy of Representation

Rule 23(a)(4) requires that the parties representing a class fairly and adequately protect the interests of the class. Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003). This requirement applies to both the named plaintiffs and counsel. London v. Wal-Mart, Inc., 340 F.3d 1246, 1253 (11th Cir. 2003). The purpose of the adequacy requirement is to protect the legal rights of the unnamed class members. Kirkpatrick v. J.C.

Bradford & Co., 827 F.2d 718, 726 (11th Cir. 1987), cert. denied, 485 U.S. 959 (1988).  "This 'adequacy of representation' analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." Valley Drug Co., 350 F.3d at 1189 (citation omitted).  Because all potential members of a class will be bound by the effect of a judgment, the Court must inquire into whether plaintiffs' counsel is qualified to carry out the litigation, whether plaintiffs have interests antagonistic to the rest of the class, and whether the plaintiffs possess the "personal characteristics and integrity necessary to fulfill the fiduciary role of class representative." Kirkpatrick, 827 F.2d at 726.  While minor conflicts will not defeat class certification, certification will be denied where the economic interests and objectives of the named representatives (or their attorneys) differ significantly from the economic interests and objectives of the unnamed class members. Valley Drug Co., 350 F.3d at 1189-90.

Defendants do not question the qualifications, experience or ability of plaintiffs' counsel.  Defendants argue, however, that plaintiffs' counsel also represent the named plaintiffs in a separate section 1983 suit seeking money damages in the Middle

District of Florida.[5]   Defendants argue that, as a result,
potential conflicts and/or antagonistic interests may develop among
plaintiffs which render counsel inadequate to represent the
putative class.  (Doc. #170, p. 5.)

Seeking injunctive relief while simultaneously pursuing
damages does not necessarily create a conflict of interest in the
class representation context.  Defendants have not cited any case
law which denied class certification on this ground.  The Court
finds this requirement has been satisfied.

**C.   Rule 23(b)(2) Requirements:**

Although plaintiffs have not met all four requirements of Rule
23(a), the Court will complete the analysis as to whether
plaintiffs satisfy Rule 23(b)(2).  "Under Rule 23(b)(2), class
certification is appropriate when the requirements of Rule 23(a)
are met and defendant "has acted or refused to act on grounds
generally applicable to the class, thereby making appropriate final
injunctive relief or corresponding declaratory relief with respect
to the class as a whole." Cooper, 390 F.3d at 729 (quoting Rule
23(b)(2)).  The Court finds that this requirement has not been
satisfied.  As discussed above, the use of force in general and the
use of chemical agents in particular is fact-intensive and does not

---

[5]The separate action is styled as Butler v. Crosby, No. 3-04-
cv-917-TJC-MMH (M.D. Fla.), and was filed on September 20, 2004.

lend itself to a finding that the grounds in any given instance was generally applicable to the class.

Accordingly, it is now

**ORDERED**:

Plaintiffs' Motion for Class Certification (Doc. #166) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this __21st__ day of June, 2005.

_____
JOHN E. STEELE
United States District Judge

Hon. Timothy J. Corrigan
Hon. Douglas N. Frazier
Counsel of Record